PRESIDENT RIVERBOAT CASINO–
MISSOURI, INC., Appellant,

v.

MISSOURI GAMING COMMISSION,
Respondent.

No. WD 62242.

Missouri Court of Appeals,
Western District.

May 28, 2004.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 27, 2004.

Application for Transfer Denied
Sept. 28, 2004.

Respondents did not file a supplemental tran-
script by the time the case was taken under submission.

William A. Brasher, St. Louis, MO, for appellant.

James R. Layton, Jefferson City, MO, for respondent.

Before EDWIN H. SMITH, P.J., HOLLIGER and HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

President Riverboat Casino–Missouri, Inc. appeals from a $25,000 disciplinary fine imposed by the Gaming Commission. President asserts the Commission erred in determining that it violated Section 313.812.14(1) of the gaming laws by failing to comply with a St. Louis ordinance prohibiting riverboat gambling licensees from contributing money to local political candidates. We affirm, without addressing the specific issue raised on appeal, because the record supports other grounds for the disciplinary action under Section 313.812.14(1).

FACTUAL AND PROCEDURAL HISTORY

In 1995, the City of St. Louis adopted Ordinance No. 63504 ("ordinance"), mak-

ing it unlawful for any holder of a gambling license to make a financial contribution to certain city officials and candidates for city offices. President, a Missouri riverboat gambling licensee, made a $100 political contribution in violation of the ordinance during September 1999.

On May 1, 2001, the Gaming Commission filed a "Preliminary Order for Disciplinary Action" alleging President violated Section 313.812.14(1)[1] of the gaming laws by failing to comply with or make provisions to comply with the ordinance.[2] President requested a hearing on the order, which proposed a disciplinary fine of $25,000.

After learning of the Commission's preliminary order, the City of St. Louis retained Michael McAvoy as special counsel to determine what action the City should take against violators of the ordinance. In January 2002, McAvoy advised the City to take no enforcement action because the ordinance conflicted with the Missouri Campaign Disclosure Law and unconstitutionally infringed the First Amendment rights of free speech and political association. McAvoy recommended repeal of the ordinance.

President's requested hearing on the Commission's proposed disciplinary action was held on August 26, 2002. President did not dispute that it made a political contribution prohibited by the ordinance in September 1999. Nonetheless, President argued it should not be penalized for violating an ordinance that was legally invalid and deemed unenforceable by the City's special counsel.

---

1. All statutory references are to the Revised Statutes of Missouri (2000) unless otherwise noted.

2. The preliminary order also alleged President's officers and directors made political

contributions in violation of the ordinance. These allegations are not at issue because the Commission ultimately did not discipline President for the individual conduct of its officers and directors.

Upon the evidence and arguments heard, the hearing officer determined President violated Section 313.812.14(1) of the gaming laws and was subject to a disciplinary fine. The hearing officer made findings that the ordinance had not been repealed, and that President made a prohibited political contribution without seeking court action to have the ordinance declared invalid.

On November 20, 2002, the Gaming Commission adopted the hearing officer's decision and ordered President to pay the $25,000 fine.[3] President appeals the Commission's final order.

### STANDARD OF REVIEW

Section 313.840.2 authorizes this court to review decisions of the Missouri Gaming Commission relating to riverboat gambling operations. Chapter 313, however, provides no further direction on the standard of review. We rely on the judicial review standards in Chapter 536 to "fill in the gaps in administrative procedures." *State ex rel. Noranda Aluminum, Inc. v. Pub. Serv. Comm'n*, 24 S.W.3d 243, 245 (Mo. App. W.D.2000).

In this contested administrative case, Section 536.140 governs the scope of judicial review. *Grace v. Mo. Gaming Comm'n*, 51 S.W.3d 891, 896 (Mo.App. W.D.2001). Our review is limited to consideration of whether the final order adopted by the Commission:

(1) Is in violation of constitutional provisions;

(2) Is in excess of the statutory authority or jurisdiction of the agency;

(3) Is unsupported by competent and substantial evidence upon the whole record;

(4) Is, for any other reason, unauthorized by law;

(5) Is made upon unlawful procedure or without a fair trial;

(6) Is arbitrary, capricious or unreasonable;

(7) Involves an abuse of discretion.

Section 536.140.2. Although a reviewing court defers to an administrative agency's findings of fact, a decision based on the application of law is reviewed *de novo*. Section 536.140.3.

### POINTS ON APPEAL

President raises two points on appeal. Point I contends the Commission erred in disciplining President for failing to comply with an ordinance that infringes President's right of free speech and political expression under the United States and Missouri constitutions. Similarly, Point II asserts the Commission erred in disciplining President for failure to comply with an ordinance that directly conflicts with Missouri's Campaign Finance Disclosure Act, Chapter 130. The central argument in both points is that the Commission violated President's federal and state rights to make political contributions by imposing a disciplinary fine for its noncompliance with the ordinance.

In response, the Commission argues the disciplinary action is supported by evidence of two separate violations under Section 313.812.14(1) of the gaming laws, but President has challenged only one of those grounds. Section 313.812.14(1) authorizes disciplinary action against a riverboat gambling licensee for "[f]ailing to

---

**3.** Two weeks after the Commission issued the final order, President challenged the ordinance by filing a declaratory judgment action in the circuit court of St. Louis. On March 14, 2003, the court declared the ordinance invalid based on conflicts with preemptive provisions of the Missouri Campaign Finance Disclosure Law.

comply with *or make provisions for compliance with* ... rules and regulations of the commission or any federal, state or local law or regulation[.]" (emphasis added) The statutory use of the disjunctive "or" indicates two independent grounds for discipline. The Commission argues that regardless of any alleged error in determining whether President failed to comply with the ordinance, the disciplinary fine is supported by evidence that President failed to make any provision to comply with the ordinance.

President contends the Commission did not expressly rule on the failure to make provisions for compliance and, thus, that issue should not be considered as a basis for affirming the final order on appeal. Our reading of the record reveals the hearing officer not only heard evidence on that issue but also made findings and conclusions that President violated the ordinance without taking any steps to challenge its legal validity.[4] While the closing paragraph of the final order does not fully explain the factual basis for the disciplinary action under Section 313.812.14(1), the findings and conclusions are sufficient to allow meaningful review of whether the Commission determined that President violated the gaming statute by failing to make any provision to comply with the ordinance. Moreover, if evidence in the record supports disciplinary action under

this theory, we can affirm the final order without regard for the hearing officer's rationale. *KV Pharm. Co. v. Mo. State Bd. of Pharmacy*, 43 S.W.3d 306, 310 (Mo. banc 2001).

Evidence at the hearing established that on September 17, 1999, President made a $100 contribution to the campaign of Matt Villa, a candidate for the St. Louis Board of Aldermen. The contribution violated a St. Louis ordinance that had been in effect since 1995. Although President argued it was unaware of the ordinance at the time the contribution was made in 1999, the hearing officer made a credibility finding that this was "unlikely" in view of the fact that President had a history of close cooperation with the City and was the only entity subject to the ordinance when it went into effect. The evidence further established that President was certainly aware of the ordinance by May 1, 2001, when it received notice of the proposed disciplinary action from the Gaming Commission.

The ordinance was never repealed by the City and remained in effect at the time of the Commission hearing in August 2002. President defended against the proposed disciplinary action by arguing the ordinance was preempted by state law and constitutionally invalid, although no court had ever made such a declaration. The Commission had no authority to determine

---

**4.** At the Commission hearing, the attorney for the Commission presented two arguments regarding President's failure to make provisions to comply with the ordinance. First, President failed to instruct its officers and directors not to make contributions to City officials and political candidates. Second, President did not pursue court action to have the law declared invalid and, thereby, avoid disciplinary action under the gaming laws. In the final order, the hearing officer expressly rejected the first argument and declined to consider whether President should be disciplined for contributions made by its officers

and directors. The hearing officer ruled on the second argument by making the following "Findings of Fact" and "Conclusions of Law":

> As of the date of the hearing the Ordinance had not been repealed by the City nor had it been declared invalid by any Missouri court of competent jurisdiction.
>
> . . .
>
> Instead of seeking a court declaration of the law's invalidity, [President] made the prohibited contribution and now seeks to be excused from discipline by the Commission.

the validity of the ordinance. The declaration of the validity of a law is "purely a judicial function" reserved for the courts under Article V, Section 1 of the Missouri Constitution. *State Tax Comm'n v. Adm. Hearing Comm'n*, 641 S.W.2d 69, 75 (Mo. banc 1982). Thus, the Commission could only presume the ordinance was valid and enforceable in the absence of contrary court ruling.

The evidence is undisputed that President took no steps to seek a declaratory judgment regarding the validity of the ordinance at any time prior to the Commission hearing.[5] By violating the ordinance without pursuing remedies to challenge its legality, President left itself open to disciplinary action under Section 313.812.14(1) of the gaming laws. The Commission initiated disciplinary proceedings in May 2001 and notified President of the $25,000 proposed fine. Still, during the twenty months the disciplinary action was pending, President made no effort to obtain a court ruling invalidating the ordinance. Based on these omissions, the hearing officer could reasonably conclude that President failed to make any provision to comply with the ordinance.

Notwithstanding any alleged constitutional error in the hearing officer's finding that President failed to comply with the ordinance, the evidence supports the determination that President made no effort to comply with the ordinance and was, therefore, subject to discipline under Section 313.812.14(1). The Commission's final order is affirmed.

All concur.

---

**5.** As noted earlier, President filed a circuit court challenge to the ordinance only *after* the Commission's final order was entered.