**CITY OF BRIDGETON, Appellant,**

v.

**TITLEMAX OF MISSOURI, INC., Respondent.**

**No. ED 92205.**

Missouri Court of Appeals, Eastern District, Division Five.

Aug. 25, 2009.

E. Robert Schultz, Chesterfield, MO, for appellant.

Daniel S. Peters, St. Louis, MO, for respondent.

## CLIFFORD H. AHRENS, Judge.

The City of Bridgeton ("Bridgeton") appeals from the judgment of the Circuit Court of St. Louis County, Missouri, in favor of Titlemax of Missouri, Inc., d/b/a Titlemax, which sought review of the Bridgeton Board of Adjustment's ("Board") decision that affirmed the Bridgeton Planning & Zoning Officer's ("Zoning Officer") denial of Titlemax's three applications for zoning certificates for proposed office locations. Pursuant to Rule 84.05(e), where the circuit court reverses the decision of an administrative agency, the appellate court reviews the decision of the agency rather than that of the circuit court. We affirm the judgment of the circuit court reversing the decision of the Board.

Titlemax, a Delaware corporation registered to do business in Missouri, sought to open three loan offices in Bridgeton, filing the appropriate applications and documents with Bridgeton in 2007. Each of the proposed office locations were in areas zoned by Bridgeton as a B–2 Community Business Zoning District ("B–2 District"). Permitted uses in a B–2 District are set out in section 410.030(D)(1) of the Bridgeton Zoning Ordinance, which was amended in 1999 to add "loan office" as a permitted use.[1] In October 2007, the Zoning Officer denied Titlemax's three applications for zoning certificates, sending out several separate letters. The letters stated that the applications were denied because they stated that the business would engage in activities listed in sections 408.500 and 367.500 RSMo Cum.Supp.2002, and that the Bridgeton zoning ordinance did not include the land uses listed in those sections of the Missouri statutes.[2] The letter dated October 31, 2007, stated in part as follows:

> I have written you letters on October 4, 2007 and October 25, 2007, of which I indicated that Bridgeton does not have a zoning district which includes permitting car title loan operations.
>
> Consequently, I cannot approve the application for a Zoning Certificate to operate a car title loan business at 11449 St. Charles Rock Road or anywhere else within the City of Bridgeton.

Titlemax appealed to the Board on January 18, 2008, seeking to reverse the Zoning Officer's denial of its applications.

The Board held a hearing on March 27, 2008. Titlemax presented a number of exhibits, including affidavits, and testimony. Zoning Officer testified, as did the City Attorney of Bridgeton, as well as an officer for Titlemax and Titlemax's attorney. Zoning Officer and City Attorney essentially took the position that Titlemax's proposed offices would not be permitted uses. Zoning Officer stated that his office has denied many applications because the proposed use was not specifically listed in the zoning ordinance. Titlemax presented evidence that it structured its business activities according to the state and local laws where it was doing

---

1. The 1999 amendment to the Bridgeton Zoning Ordinance defined "Loan Office" as follows: An institution in which the primary or a substantial portion of its business is the provision of consumer credit loans of at least $500.00 and a minimum loan term length of 12 months. Such institution shall be licensed or hold a certificate of registration from the appropriate state agency.

2. All statutory citations, unless stated otherwise, are to RSMo. Cum.Supp.2002.

business and that it qualified as a "loan office" under the Bridgeton Zoning Ordinance. Its loan contracts in Missouri were for loan periods of twenty-four months, with a minimum loan amount of $500. The average loan was over $1,000. Titlemax did state that the average loan repayment time was only ten months, though the loan contracts were for twenty-four months. There was testimony that Titlemax is licensed by Missouri's Division of Finance. Titlemax' real estate officer, Paul Bland, testified that Titlemax is a consumer installment lender under section 408.510, and is not organized as a car title lender or title loan company under Chapter 367 of the Revised Statutes of Missouri. He conceded that some sections of the company's operations would come under Chapter 367, but that it was organized under section 408.510. Evidence was also presented that a substantial part of Titlemax's business is providing consumer credit loans of at least $500. The president of Titlemax submitted an affidavit affirming that Titlemax met Bridgeton's definition of "loan office" and that it met each of the required elements as set forth in the Bridgeton Zoning Ordinance.

There was also testimony that in 2002, the Missouri Legislature enacted statutes that more specifically differentiated title loans in sections 367.500 et seq. and also addressed licensure of consumer installment lenders in section 480.510. Section 480.510 provided that consumer installment lenders were subject to the provisions of sections 408.551 to 408.562. The Bridgeton Zoning Ordinance was not subsequently amended to redefine "loan office." Titlemax insisted at the hearing that it met the requirements for being a "loan office" under the Bridgeton Zoning Ordinance, and was a permitted use in B–2–Districts, and presented evidence to that effect.

The Board made findings of fact and conclusions of law on each of Titlemax's three applications to open a "loan office" in areas zoned as a B–2 District. Other than having different street addresses, the Board's findings and conclusions were essentially identical. These findings stated that:

> Petitioner [Titlemax] is registered as a "Consumer Installment Lender Company" pursuant to Section 408.510 and Chapter 367 R.S.Mo.

> Section 410.130.D.1 of the Bridgeton Zoning Code lists the "Permitted Land Uses" for property in the B–2 District.

> Among the listed "Permitted Land Uses" is "loan office."

> When enacting Ordinance No. 99–75, the Bridgeton City Council intended to exclude businesses providing pay-day loans and car title loans from the list of "Permitted Land Uses."

> Petitioner only makes loans secured by a pledge of the borrower's automobile title certificate.

> Petitioner's proposed use does not fit within the definition of "loan office" because Petitioner's proposed use is actually a car title loan business and car title loan businesses are not specifically listed as a "Permitted Land Use" in the B–2 District.

> Bridgeton's zoning interpretation policy is that if a land use is not specifically permitted by the Zoning Ordinance, it is prohibited.

> Furthermore, the average loan made by Petitioner in its business operations in Missouri is re-paid within ten (10) months of the date on which it is made. Therefore, Petitioner fails to satisfy the requirement in the "loan office" definition that the minimum term of a loan made by a "loan office" is twelve (12) months.

In a split vote, the Board denied Titlemax's appeal and made the following conclusions of law:

The Petitioner [Titlemax]'s proposed use does not fit within the listed Permitted Land Use because Petitioner intends to operate a car title loan operation and car title loan operations are not specifically listed as "Permitted Land Uses" within the B–2 District.

Additionally, the average term of repayment of Petitioner's loans is ten (10) months and therefore, Petitioner's proposed use fails to satisfy the definition of "loan office".

The City has a valid interest in enacting and enforcing ordinances which are aimed at promoting the general welfare of the City, preserving the character of neighborhoods and protecting its citizens.

The City purposefully amended its Zoning Ordinance in 1999 with an intent to make it clear that the type of use proposed by Petitioner is not a Permitted Land Use, in light of the potential negative effects on the general welfare of the City, the character of its neighborhoods and the safety of its citizens.

In making the decision not to permit businesses of the type proposed by Petitioner, the City's Planning and Zoning Commission and City Council considered the impact that such businesses may have on the willingness of other businesses to locate in the City of Bridgeton, the high rates of interest charged by such businesses and the debt-cycle that many customers of these businesses fall into and the potential for crime related to such businesses.

Titlemax filed a verified petition for writ of certiorari and/or judicial review and declaratory judgment in the Circuit Court of St. Louis County. The trial court entered an amended judgment on October 10, 2008, reversing the decision of the Board based on its review of the record, briefs, and findings of the Board "for the reason that there is not substantial and competent evidence in the record which proves that [Titlemax]'s business operation, including the loan period herein, does not comply with the City of Bridgeton ordinance."[3] The trial court specifically referenced a page in the transcript of the Board hearing where Titlemax's attorney stated that its loan term periods, as evidenced by documents submitted to the Board, are for twenty-four months.

Bridgeton appealed from the decision of the trial court. Under Rule 84.05(e), when the circuit court reverses the decision of the administrative agency and this Court reviews the decision of the administrative agency, it is the party aggrieved by the decision of the agency that should file the appellant's brief and reply brief, if any, and the party aggrieved by the circuit court's decision must prepare the respondent's brief. Eastern District Special Rule 355, "Reversal of Administrative Agency Decision by Circuit Court," requires that the appellant file a statement that respondent shall file the first brief in accordance with Rule 84.05(e), and that the appellant file this statement with this Court "on or before the time when the record on appeal is filed and shall serve a copy on respondent." Bridgeton did not do this, but rather filed an appellant's brief, and Titlemax responded by filing a motion to clarify the briefing schedule.

This Court issued an order in which it noted that it would be justified in striking Bridgeton's brief for failure to comply with Rules 84.05(e) and 84.04(d)(2), which sets

---

**3.** The trial court entered a judgment on October 8, 2008, which it thereafter amended nunc pro tunc because of a typographical error.

forth the contents of a point relied on for the first brief where an appellate court reviews the decision of an administrative agency. However, this Court reluctantly did not do so, noting that Titlemax could have brought this matter to our attention. This creates a problem for our review in that Bridgeton's appellant's brief asserts error by the circuit court, and we do not review the circuit court's decision. Titlemax, in its respondent's brief, addressed the issues raised by Bridgeton, but also raised two points relied on in which it contended that the Board erred in sustaining the decision of the Zoning Officer to deny its applications for zoning certificates and that the Board exceeded its legal authority by failing to apply the ordinance as written and implying terms into the ordinance. Because we review the decision of the administrative agency and not that of the circuit court, we will address Titlemax's points relied on.

■ We will consider Titlemax's two points relied on together. In its first point relied on, Titlemax contends that the Board erred in sustaining the decision of the Zoning Officer to deny Titlemax's applications for three zoning certificates because the substantial and competent evidence on the whole record established that Titlemax's proposed operation in Bridgeton is a permitted use in the B–2 District in that it meets the definition of a "loan office" as defined in the amended Bridgeton Zoning Ordinance. Titlemax further alleges that there was neither competent nor substantial evidence to support the Zoning Officer's denial of its application or the Board's affirmation of that denial. In its second point relied on, Titlemax argues that the Board erred in sustaining the decision of the Zoning Officer because the decision was not authorized by law in that the Board exceeded its authority by not applying the ordinance as written, but instead implying terms into the ordinance.

■ We review the decision of the administrative agency, not the judgment of the circuit court. Shipman v. DNS Electronic Materials, Inc., 267 S.W.3d 751, 757 (Mo.App.2008). This Court's review is limited to the determination of whether the agency's decision is supported by competent and substantial evidence upon the whole record, whether the decision is arbitrary, capricious, or unreasonable, or whether the decision is in excess of the agency's jurisdiction. Id. This Court considers the evidence in the light most favorable to the administrative agency. Id. at 757–58. We do not reweigh the evidence. Versatile Management Group v. Finke, 252 S.W.3d 227, 233 (Mo.App.2008). If the evidence would support either of two different, opposed findings, this Court is bound by the determination of the administrative agency. Id. "However, when an administrative decision is based on that agency's interpretation and application of the law, this Court reviews the agency's conclusions of law de novo." Shipman, 267 S.W.3d at 758.

■ The Board interpreted its ordinances in its conclusions of law, and determined "as a matter of law" that Titlemax's proposed use did not fit within the permitted uses for the B–2 District because Titlemax intended to operate a car title loan operation, which is not specifically listed as a permitted use, and also determined that the proposed use failed to satisfy the ordinance definition of "loan office" because borrowers, on average, repaid their loans in ten months. " 'Statutory construction is a matter of law.' " Id. (quoting Dubinsky v. St. Louis Blues Hockey Club, 229 S.W.3d 126, 130 (Mo.App.2007)). In ascertaining the meaning of a city ordinance, we apply the same rules used in construing a state statute. State ex rel. Killingsworth

*v. George,* 168 S.W.3d 621, 623 (Mo.App. 2005). The principal rule of statutory construction is to determine the intent of the legislature from the language used in the statute by applying the plain and ordinary meaning of the words used therein. *Shipman,* 267 S.W.3d at 758. Where the statutory language is clear and unambiguous, this Court will give effect to the language as written and not engage in statutory construction. *Id.* We presume that the legislature intended that every word, clause, sentence, and provision of a statute have effect and ought to be given meaning. *Id.* Conversely, we presume that the legislature did not include excess verbiage in a statute. *Id.* "Courts are not authorized to read a legislative intent into a statute that is contrary to the intent made evident by the plain and ordinary meaning of the statutory language." *Id.* (quoting *Dubinsky,* 229 S.W.3d at 130).

The amended ordinance at issued included "loan office" as a permitted use in the B–2 District, and defined it as follows:

> An institution in which the primary or a substantial portion of its business is the provision of consumer credit loans of at least $500.00 and a minimum loan term length of 12 months. Such institution shall be licensed or hold a certificate of registration from the appropriate state agency.

This definition is clear and unambiguous. The evidence presented at the hearing establishes that Titlemax's proposed use in each of the applications for a zoning certificate meets the definition of "loan office." Its primary business is providing consumer credit loans. The evidence presented was that the minimum loan amount in Missouri for Titlemax is $500, and that its computer programs would not permit loans for a lesser amount. The only evidence of loan term length is that the loan agreements are for a period of twenty-four

months. Titlemax is licensed in Missouri by the Division of Finance under section 408.510 as a consumer installment lender. The Board's focus on the average repayment period as the measure of whether an institution meets the requirements of the definition of "loan office" has no basis in the ordinance. The ordinance uses the language "minimum loan term length of 12 months." The plain and ordinary meaning of "loan term length" refers to the term or duration of the loan in the promissory note or loan agreement between the borrower and the lender. It does not refer to the average repayment period for a loan as the measure of "loan term length." There is no substantial evidence to support the Board's decision, and its interpretation of the plain and ordinary language of its amended ordinance is erroneous. Points sustained.

The amended judgment of the circuit court reversing the decision of the Board is affirmed.

KENNETH M. ROMINES, C.J., and ROY L. RICHTER, J., concur.